Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. My name is Beverly Martin and I'd like to welcome you all here to what passes for oral argument these days. We, all of us on the panel today, would much prefer to be together in person but we just can't do that yet. I've enjoyed being with judges Newsom and Branch this week. It's been a pleasure. We have three cases today. Mr. Robinson is running our timekeeping clock and it is very much like a traffic light system. When you have two minutes left to go of your argument, the clock will turn yellow and then once it turns red, we ask that you wind your argument up pretty quickly. So with that, I'm ready to start the first case if counsel is. So I'll call the case of Jacob Horn v. Liberty Insurance Underwriters. Good morning, your honors. May it please the court. My name is Yelena Schneiderman and I represent the appellants in this matter. This is an insurance coverage action where the Southern District of Florida entered summary judgment in favor of the Appley Liberty and we request this court to reverse and remand. By way of background, this case arises out of an amended underlying class action complaint filed by appellants against Liberty's insured ICANN for violations of the CPA, the Telephone Consumer Protection Act. Although actual damages were alleged, the plaintiffs or the appellants saw it only statutorily allowed liquidated damages of 500 per violation or up to 500 per violation depending on which count and these liquidated damages were ultimately settled. In fact, paragraph 17 of the amended class action states that plaintiffs filed this action seeking injunctive relief and an award of statutory damages. Liberty, which had issued a liability policy to ICANN, the defendant below, defendant in the underlying case, refused to defend or indemnify ICANN relying on four exclusions in its liability policy, only one of which is at issue today, exclusion B4 and that exclusion states that the insurer shall not be liable for loss on account of any claim made against the insured based upon arising out of or attributable to any actual or alleged defamation, invasion of privacy, wrongful entry and eviction, and some other common law courts. Since Liberty was not defending, the parties entered into what's known as a Koblenz agreement where ICANN agreed to the entry of judgment against it, to the entry of judgment. Judge Schneiderman, this is Judge Newsom, not to knock you off your stride, but I'm guessing that Judges Martin and Branch and I sort of have the procedural posture down. I think you might be well served just to kind of dive into the interpretive issue that's before us. I appreciate that. Yes, I'll move forward then. Okay, so there are two issues on appeal. One is whether the court properly entered summary judgment on the basis of the exclusion before, and secondly, whether Liberty's allocation argument, which was raised for the first time in its response to the appellant's motion for summary judgment, should have been considered by the court and whether the court should have entered summary judgment based upon that separate issue. And so with respect to the first argument, which is the exclusion B4, it is our position that that exclusion does not apply because it is ambiguous and because it should not apply here where the cause of action for TCPA does not require an allegation or proof of invasion of privacy. Counsel, as to your first point that the invasion of privacy exclusion is ambiguous, isn't that undermined by the Florida Supreme Court's holding in Pinzer? Well, Pinzer did analyze TCPA violations in terms of a coverage provision in a commercial general liability policy, which was not the same policy as here. And it interpreted a policy provision rather than an exclusion. And so it is our position that a different standard applies to interpreting exclusions and that exclusion should be interpreted in the broadest possible way in favor of coverage. And if there's any way to interpret the exclusion both in favor of coverage and against coverage, it should be interpreted in favor of the insured. So can I ask you a follow-up question about maybe the policy at issue in Pinzer? Here, as you mentioned in your sort of preliminary recitation, the exclusion lists, I don't know, a dozen common law torts, one of which is invasion of privacy. In Pinzer, the decision anyway, and I haven't tried to look through, nor do I recall the language of the policy itself, but the decision there referred to something called the quote, right of privacy, which doesn't sound to me like a common law cause of action. In addition to the coverage provision versus exclusion provision distinction that you're drawing, is there something about a difference between an invasion of privacy, which you take to be a common law tort, and a right of privacy that was at issue in Pinzer? Well, yes. I mean, I think this is also the distinction. I mean, here, the exclusion on its face, when you read it, first of all, right, it lists what can be read as common law torts. And in relation to some other policy exclusions in this particular policy, which referred to other common law torts, that it excludes like exclusion B6. And also, as part of exclusion B6, it excludes coverage for related statutory provisions also. So it is our position that since Liberty was able to draft an exclusion that excluded both common law torts and their related statutory violations, that it could have done so in this case also. And there are other cases where specific TCPA exclusions were also analyzed, and included in the policies. One of those cases is James River versus Med Waste from the Southern District of Florida. And in that case, the insurance company had a specific exclusion that barred coverage for those exclusions clearly exist in the insurance industry. And so just so I understand your position on Pinzer, I mean, you can say, look, Pinzer was rightly decided, but for two reasons. One, because it dealt with a coverage provision as opposed to an exclusion provision. And two, because it said, any, you know, what does it say, any publication of any material that violates a person's right to privacy, you can say, yeah, that captures the TCPA perfectly. And then it's your position, just so I understand that invasion of privacy is something different, especially given the context situated among these common law torts. Well, yeah, I mean, I think that, yes, correct. I mean, I think that the Pinzer was, you know, it can be found the Pinzer was correctly decided because it analyzed a different exclusion, because it interpreted it in a particular way based on that language. And here, it's not mutually exclusive that Pinzer is correct. And so therefore, an exclusion with different language has to bar coverage on the basis of Pinzer. And I think that the case in the Ninth Circuit of L.A. Lakers, although the majority did not rule in our favor, the dissenting opinion in L.A. Lakers sets for, you know, supports our argument. And we urge the court to be persuaded by that analysis, where the dissenting judge found, Judge Tolman, that where Congress defines a cause of action based on specific and unambiguous elements, what matters are the elements and not what is mentioned in the statute. So where an invasion of privacy is part or, you know, is part of legislative intent, that perhaps that's what was intended to protect when Congress passed the TCPA. Congress also set forth elements that would need to be proved in order to prevail on a TCPA cause of action. An invasion of privacy was not one of those elements. And in fact, the court mentioned another statute, a RICO statute, that also said, look, the intent of RICO was to prevent organized crime. But there's nothing within the elements of that statute that require proof of organized crime. You just have to go by the elements. And that is the sort of the basis of our position as far as the elements of the TCPA. And secondly, you know, as far as looking at the language of the exclusion, the language itself can be found to be ambiguous, because it doesn't provide fair notice. And it doesn't specifically bar statutory claims based on those common law torts. So just one more question, and then I'll zip it and let you let you talk. What do you do with the recent Supreme Court case, the Bar versus American Association case that describes the TCPA as protecting against not quite invasions of privacy, but privacy invasion? Pretty close. Well, I think it goes back to the argument that, look, if you're going to look at what the TCPA was intended to protect, and if you're going to read, you know, that invasion of privacy as, you know, being included in or just being part of any cause of action for TCPA violations, then, you know, I would submit that we wouldn't prevail. But I where you have, where you're analyzing more than the intent of the statute, where you're looking at the allegations of the complaint, where you have to look at what do you need to prove these elements of a cause of action, and where the conduct that is excluded is not part of the elements of the complaint, I would submit that a cause of action should not and cannot arise out of conduct that does not need to be alleged or proven in order to prevail on this cause of action. And I think there's some... Can I just give you a chance to respond? I mean, all of that's really interesting. I've kind of seen this case as just a straightforward contract interpretation case. I mean, it defines a claim as a civil proceeding against, you know, for claims of invasion of privacy, and your complaint is replete with claims of invasion of privacy. So it seems like you've got a hard time. I, you know, I did not draft the complaint. And really, you know, I, those to me, those factual basis are extraneous to the actual, you know, the main cause of action and the facts that you need to prove the actual elements, you know, and there's some precedent for that. Like, there's a case in Lime Tree Beach State Farm. The court also examined whether exclusions for intentional acts and discriminations and discrimination barred coverage for a complaint which alleged discrimination and restraint of trade in violation of federal and state statute. And the court said that because the plaintiffs do not need to prove intent against the insured in order to prevail, coverage should not be excluded. So to the extent that there's facts in this complaint that are alleged that do not need to be proven in order to prove that you're entitled to remedy under the TCPA, we asked the court to, you know, look, look at the other allegations and interpret, you know, the the exclusion in the broadest possible way, in favor of coverage. I see that my time is almost up. And I would like to address the second part of the allegation if I can before cutting into my rebuttal time. And so in this case, you know, if this court finds that the entire lawsuit is based on or arises out of the invasion of privacy, then the allocation argument is moot and we don't need to get to it. However, if the court finds that the lawsuit is not based or arises out of an invasion of privacy, and that only covered claims were alleged, then again, we don't need to get to the allocation argument. Because then only it would mean that only covered damages were settled. I do see that my time is up. And if I, I could continue or I could address this argument on rebuttal. With your permission, we'll give you your full time for rebuttal. Okay, thank you. All right. Mr. Schiller. Good morning, Your Honor is Ron Schiller for Liberty Insurance. And I'm going to jump right into Judge Newsom's question and Judge Martin, your comment. This is first off, a breach of contract case. And yes, it's an insurance coverage case. So there are necessarily some construction principles that deal with insurance contracts that we take into account. But Judge Newsom's questions about Penzer go to the first of two issues on whether or not the right of privacy was was part of the complaint. Now, Judge Martin raised the issue of whether or not essentially you even have to get there. Because the first argument is a right of privacy is inherently part of a TCPA complaint. And one of the arguments that the policy holder, and actually not the policy holder, let's be clear, the class plaintiffs on a covenants assignment are raising, is that it's not inherently part of a TCPA complaint. And that's what makes Penzer and the recent bar decision important. And to be clear, there are two sections of the TCPA, which explicitly cite privacy, you don't have to go into the legislative history. And the plaintiffs in the underlying case cited those two provisions. The LA. Mr. Schiller, this is Judge Newsom. So I think anyway, that I heard Ms. Schneider basically say, granted, you know, Penzer talks about the right of privacy sort of generically, and nobody disputes the TCPA aims to protect privacy at some level. But her position is, and I'll just put my cards on the table, I find it pretty convincing that the exclusion here is a list of about a dozen common law torts, one of which is invasion of privacy, which has elements, you know, just like defamation does just like false arrest does just like malicious prosecution does just like assault does. And then separately, there's an exclusion for federal statutory causes of action that doesn't include the TCPA. And then, thirdly, I suppose, you do have these construction principles arrayed against you, which requires you to show a lack of ambiguity. And that just seems like an awfully still steep hill for you to climb. Okay, let me start with the last point, Your Honor. First off, Penzer was a five to two decision. So it's the law, the Florida Supreme Court decided it and the Florida Supreme Court did not decide that this was an ambiguous issue. Candidly, the two justices who concurred would have gone on ambiguity. But the majority decision, the law of Florida is that it was not an ambiguous provision. That's why Penzer matters here, Your Honor, because the Supreme Court of Florida decided that a TCPA claim necessarily involved and I'm sorry, Your Honor, you're muted. Oh, no, no, no, you're good. Okay, because the Florida Supreme Court necessarily decided that the TCPA included privacy, and it didn't do so because of ambiguity. That matters, Your Honor, because the only construction issue that treats an insurance grant differently than an exclusion is when you take into account ambiguity and construe exclusions as a result narrowly and construe coverage grants broadly. The Supreme Court refused to go there. That's also totally consistent with the L.A. Lakers decision, which counsel for the plaintiffs mentioned. The L.A. Lakers decision dealt with an exclusion and it dealt with both legislative history as well as the statutes language and said that this is a privacy statute. Your Honor, the Florida law, and now I'm dealing with the second issue you had mentioned, but Florida law is very clear that an exclusion to be enforceable does not have to give a list either of statutes or of common law or a mixed list of statutes and common law, and I think it's important to recognize. I guess just, you know, as an interpretive matter, do you deny when you look at the exclusion? I guess let me ask you this, just sort of yes or no. Is that a list of common law torts? It's a list of common law torts that are also taken into account in some Florida statutes as well as the TCPA, which obviously is a federal statute, Your Honor. And to be clear, the TCPA, when referring to right of privacy, that's referring to the common law right of privacy. And Judge Martin may recall this because she was involved in a Georgia case years ago called London Limited. But in that case, which conceivably was construing Georgia law, not Florida law, but the district court dealt with an issue that was confronting courts around the country, which is how do you construe privacy when some common law cases construe it as a right to seclusion only and others to be let alone, and others construe it as the right not to have bad things said about you if there's a secret you want to protect. And so I'll tell you, just for my purposes, which, you know, that's only one third of the purposes you care about, of course, but for my purposes, we need to stop talking about privacy in the abstract and start talking about invasion of privacy, which, you know, to me, sort of carries a common law connotation, just like everything else that's in that list, just like assault does just like malicious prosecution does. I mean, malicious prosecution, you know, for instance, doesn't have some sort of abstract gestalt meaning or something. It's got a real meaning with real elements. And I think that by virtue of invasion of privacy situation in this list, that's a pretty strong indication that that's what the policy is aiming to exclude. Yeah, Your Honor, invasion of privacy, though, is precisely what the TCPA was dealing with. I mean, Penzer says, in this case, the sort of the right of privacy is the TCPA, which provides the privacy right to seclusion. That's a common law concept, seclusion. The TCPA did not did not develop the right of seclusion. It's protecting the right of seclusion as a common law principle. But Your Honor, well, I don't know if you're asking a question, but what I was going so let me just ask you a follow up. So I mean, is there a common law tort called violation of seclusion or something like that? There's a common there's a common law tort of the violation of the right of privacy, which includes the right of seclusion. It can also include and it varies by state, Your Honor, but it can also include the right to have secrets not disclosed. Those are common law rights. They're not state statutes for the most part. And the TCPA and Penzer are recognizing that. But the other thing is, I'll go to Judge Martin's point just to emphasize it. I think, obviously, because we argued this, that the TCPA and Penzer and L.A. Lakers, which specifically dealt with an exclusion, found no ambiguity, found that the statute itself was grounded in privacy and applied an exclusion like here to say that implicit in the TCPA is the right of privacy. But the court doesn't even have to get there. And the reason the court doesn't have to get there is because of what we briefed and what Judge Martin was asking about. Namely, Your Honor, this complaint was filled with allegations of a breach of the right of privacy. And it also mentioned other things. Yes. But every single count incorporated or referred to the right of privacy. And as the court knows from our does not mean ambiguous. Broad does not mean unenforceable. The exclusion goes on to say that a claim is barred to the extent that it arises out of invasion of privacy, arises out of is defined as having a connection to a claim is defined in this policy as the lawsuit. Now, we argued in the district court and also argued here is that a claim is clearly defined and there's no way around it. And the policyholders, policyholder, the class plaintiffs haven't said there's a way around it. But even if you said a claim could be a count, every count alleges a right of privacy. So on a pure contract construction and there's nothing in the rules of insurance construction that varies this. This claim is a lawsuit that alleged an invasion of privacy. And every count, even though we argue you don't have to go to every count, you have a lawsuit. That's the civil proceeding that commenced the claim alleges an invasion of privacy. And to be clear, because it also implicates the allocation argument, which was the second basis for the liberty warned the class plaintiffs and the insured. This is a problem of plaintiff's own making. The panel asked counsel whether or not it's true that the complaint has allegations of invasion of privacy throughout. And her answer was she didn't draft that complaint. It does. The other answer, of course, was and you don't have to have invasion of privacy as an element of the TCPA, but our exclusion does not depend on whether or not invasion of privacy is an element of a claim. The class plaintiffs here made a decision. I assume that next time they bring a TCPA purported class action, they will not put invasion of privacy in every count or do it the way they did. But they did here. And in addition, when Liberty sent a reservation of rights and ultimately a declination letter, it cited this exclusion. And knowing that the class plaintiffs went ahead and they and they purported to certify class within a day, reach a 60.4 million dollar settlement, no discovery run into the district court, have a very short hearing to certify the of the plaintiff's opening. Ms. Schneiderman mentioned that she would get more to allocation. Allocation is important here because one, under Florida law, it's not a defense. It's a requirement and the policyholder has the burden. Secondly, if there's anything not covered, and clearly there is because of the invasion of privacy allegations in the complaint. If there's anything not covered, and we believe because of the breadth of the arising out of or having a connection to for a claim, nothing's covered. But even I think the plaintiffs would have to concede something's not covered because invasion of privacy is here. So something would have to be allocated. And there Why doesn't the allocation provision and the policy displace the Florida default rule on allocation? Because it doesn't say who has the burden. It does two things, Your Honor. It provides that where there's a covered and uncovered loss, that there will be 100 percent defense provided. And that's if something is covered, which the policyholder hasn't shown, we believe. And secondly, it provides for the standard in the event that a court, the parties, or anyone else is to allocate, which is relative, relative legal exposure. It does not shift the burden. It does not say the insurer now has the burden. And as we cited in the briefing to the court, there are courts, including in Florida, that have said that an allocation provision does not change the burden, Your Honor. Can I ask you an allocation-related question as well? So I guess I'm having a hard time figuring out why there's any middle ground with respect to allocation. It sounds like on Ms. Schneiderman's view, invasion of privacy is solely a common law tort. That's not the count here. And so nothing is excluded. And on your view, this is about the right of privacy more generally. The TCPA is about privacy. And so everything is excluded. How are we in an, how are we, how do we kind of find ourselves in allocation land where some stuff is in and some stuff is out? I just don't quite get it. Well, Your Honor, I don't see, frankly, how one can read the exclusion for a claim that arises out of invasion of privacy, because it doesn't have to be a claim that states a cause of action for a right of privacy. So I agree with Your Honor. Wait, wait, wait, wait, wait. So now you're answering like the sort of the first half of the case. Now I'm just asking about allocation. Assume that Ms. Schneiderman's got a position, all or nothing, nothing is excluded, because this is just about invasion of privacy in the common law sense. You've got a position that says everything is excluded because the TCPA, you know, sort of is undergirded by privacy concerns. How is it that on either position we find ourselves where some of the stuff is in and some of the stuff is out? I just don't really understand how allocation has any independent bite. Because they also allege things relating to wear and tear, nuisance, use of batteries, inconvenience, and individualized damages. They made a decision that they didn't want the court to do that because they were afraid that it would harm their chances of getting class action certification under Rule 23 for typicality and commonality. That was their decision. When they made that strategic decision, instead of trying to allocate for things that clearly had a value and may have been different values for different potential plaintiffs, and they would have had to put on evidence of that. And those things, if the exclusion is not applied the way we've argued it should be, those things have value. When they made that decision, they waived allocation. Okay, that's helpful. Thank you so much. Thank you, Mr. Schiller. Ms. Schneiderman. Okay, thank you, Your Honor. So first, I just want to go back to the L.A. Lakers' dissent where the courts stated that I thought we were interpreting a statute based on the elements of the cause of action it creates. It further stated that although there's no need to examine the underlying purpose of the TCPA, it is simply not true that Congress only enacted the TCPA to prevent invasions of privacy. So again, it's our position that the complaint does not arise out of the invasion of privacy. Now, as far as allocation is concerned, there's testimony by the attorneys who represented ICANN in this case, which stated that only and Gary Dunkle, docket entry 107-4 and 107-2. They testified that the $60 million amount was arrived at based on over 2 million unique telephone numbers that were identified to which telephone calls were made in violation of the TCPA. So really, it comes out to approximately $23 per violation. And nowhere did the parties have to prove actual harm. And the statute does not require that you have to prove actual harm. All it says is that if you meet the elements, you're entitled to either actual harm or to $500 per violation. And in this case, the party settled for approximately $23 or $24 per class member. So number one, only cover damages were settled. Number two, Liberty clearly waived the allocation argument. They raised it for the first time in their response to the appellant's motion for summary judgment. It was not timely raised. And it is an affirmative defense, because it's a defense. It otherwise admits the complaint, but says, hey, look, there's other factors that negate coverage in this case. These factors are not based on policy exclusions, but on certain conditions. And conditions are, or Florida law. And that should have been raised. And we should have been provided with notice about that affirmative defense. And in Kilowatts v. Kilowatts, the Southern District of Florida states that an affirmative defense is one that admits to the complaint, but avoids liability by new allegations of excuse, justification, or other negating matters. So this was you know, this is something that this is something that Liberty should have raised in their answer to the original complaint. We filed an amended complaint, and they had time to amend their pleadings pursuant to the district court's order. So, and this was never done. Finally, yes, we believe that the allocation provision in the policy shifts the burden to the parties to equally apportioned damages or loss to the extent that there's covered loss and uncovered loss. And finally, allocation is also a coverage defense, which requires compliance with Florida's claims administration statute 627.426. And because it is defense to coverage that otherwise exists, that otherwise is not excluded by any policy exclusions, but it otherwise exists, but certain things prevent or there are certain conditions that otherwise bar coverage. And so, Liberty's failure not only to assert it as an affirmative defense, but to also comply with the claims administration statute bars, you know, they fail to preserve this defense. And finally, you need to wind it up. Your time has exceeded. Oh, I'm sorry. I'm sorry. Yes. Thank you. Thank you so much. I will conclude my argument if the court does not have any questions. All right. Thank you very much.